```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- X
                                                          :
   In the Matter of                                       :
                                                          :    **ORDER STRIKING RESPONDENT'S**
   ANTOINETTE M. WOOTEN, An Attorney                      :    **NAME FROM THE ROLL OF**
   and Counselor-at-Law,                                  :    **ATTORNEYS**
                                                          :
                         Respondent.                      :    15 MC 1496 (BMC)(RML)
                                                          :
                                                          :
--------------------------------------------------------- X
```

**BEFORE THE COMMITTEE ON GRIEVANCES OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

**Edmund Polubinski, III**
**Carissa Marie Pilotti**
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
*Attorneys for the Committee*

Antoinette M. Wooten, Respondent *Pro se*
The Wooten Legal Consulting, PC
c/o Wilson Law, LLC
255 Livingston Street
4th Floor
Brooklyn, NY 11217
  -and-
c/o Florestal
The Wooten Legal Consulting, PC
116 West 23rd Street
5th Flr.
New York, NY 10011

This matter came before the Committee on Grievances upon the Report and Recommendation of Magistrate Judge Robert M. Levy, pursuant to an Order of Referral from the Committee, to conduct such hearings and proceedings as may be necessary and to report and recommend to the Committee what action, if any, should be taken upon an Order to Show Cause and Statement of Charges filed against Respondent Antoinette M. Wooten, an attorney admitted to practice before this Court, arising out of her disposition of escrowed settlement funds received in an action previously pending in this Court. The Report and Recommendation, set forth in full below, recommends that Respondent's name be stricken from the roll of attorneys admitted to practice before this Court.

No objection has been made within the time period set forth in the Report and Recommendation.[1] The Committee has carefully reviewed the Report and Recommendation and the record of proceedings before Judge Levy, and concurs in full with the findings and conclusions of Judge Levy for the reasons stated. It further concludes that the sanction of removal from the roll of attorneys is appropriate in light of the severe misconduct in which Respondent has engaged. Accordingly, the Committee adopts the Report and Recommendation as its findings of fact and conclusions of law in this matter, and further directs the Clerk to strike Respondent's name from the roll of attorneys authorized to practice before this Court.

**SO ORDERED.**

                                                        U.S.D.J.

Dated: Brooklyn, New York
       October 11, 2016

---

[1] Respondent has filed a notice of appeal to the United States Court of Appeals for the Second Circuit from the Report and Recommendation. The Report and Recommendation is not subject to appeal and thus the notice of appeal does not divest the Committee of jurisdiction to consider the Report and Recommendation. See United States v. Rodgers, 101 F.3d 247, 251-52 (2d Cir. 1996).

# REPORT AND RECOMMENDATION

LEVY, United States Magistrate Judge:

This matter comes before the Committee on Grievances of the Board of Judges of the United States District Court for the Eastern District of New York (the "Committee") to consider the imposition of discipline against respondent Antoinette M. Wooten ("Respondent"), an attorney admitted to the bar of this Court. (See Order to Show Cause with Statement of Charges, dated Jan. 18, 2016 ("Statement of Charges"), Dkt. No. 7.) The matter was referred to me on March 31, 2016 by the Honorable Brian M. Cogan, United States District Judge, to conduct an evidentiary hearing and issue a report and recommendation. (See Order, dated Mar. 31, 2016.) After facilitating targeted discovery, I held an evidentiary hearing on August 3, 2016, at which Respondent was the sole witness. (Minute Entry, filed Aug. 4, 2016.) Respondent and Committee-designated prosecuting attorneys Edmund Polubinski and Carissa Pilotti ("Prosecuting Counsel") then filed post-hearing submissions. (See Prosecuting Counsel's Proposed Findings of Fact and Conclusions of Law, filed Aug. 24, 2016 ("Prosecuting Att'y Mem."), Dkt. No. 48-1; Memorandum of Law in Opposition to Prosecutors's [sic] Adversary Proceeding, filed Aug. 24, 2016 ("Resp't Mem."), Dkt. No. 49.) For the reasons discussed below, I find there is clear and convincing evidence that Respondent has violated the New York State Rules of Professional Conduct (the "Rules"). I respectfully recommend that the Committee issue an Order striking Respondent's name from the roll of attorneys admitted to the bar of this Court.

## BACKGROUND AND FACTS

Respondent is an attorney admitted to practice in the State of New Jersey and the United States District Courts for the District of New Jersey and the Southern and Eastern

Districts of New York.  (Evidentiary Hearing Transcript, filed Aug. 12, 2016 ("Tr."), at 22:10-17, Dkt. No. 47.)  This disciplinary matter concerns Respondent's conduct as attorney for the plaintiff in an employment discrimination action filed in the Eastern District of New York in September 2012, and dismissed with prejudice in March 2014 pursuant to a settlement agreement.  (See generally Statement of Charges.)  The following facts, which are largely undisputed, are drawn from testimony given at the evidentiary hearing, as well as Respondent's and Prosecuting Counsel's submissions to the Court.[2]

        Respondent was counsel of record for plaintiff Dolores R. Edkins in the action captioned Edkins v. City of New York, et al., No. 12-CV-4431 (ILG) (RLM) (the "Action") before the Honorable I. Leo Glasser, United States District Judge.  (Tr. at 22:21-23; 23:8-23.) Respondent had been introduced to her client by Ms. Edkins' uncle, Edward Armstrong, an attorney and former law school classmate of Respondent.  (Id. at 23:1-7.)  On March 10, 2012, Respondent and Ms. Edkins executed a letter of engagement in relation to the Action.  (Id. at 23:25-25:15; see Letter of Engagement, dated Mar. 10, 2012 ("Engagement Ltr."), Dkt. No. 54-1.)  Pursuant to the engagement letter, Respondent's fee for her representation of Ms. Edkins was to be 33 and 1/3 percent of any award in the Action, plus Respondent's expenses.  (Tr. at 25:16-26:10; see Engagement Ltr. at 1-2.)  Respondent filed a complaint on Ms. Edkins' behalf on September 5, 2012, asserting employment discrimination claims against the City of New York

---

[2]  Although I have largely omitted a procedural history of this matter, I note that Respondent was afforded ample opportunity to obtain counsel but was ultimately unable to do so and has appeared *pro se*.  (See, e.g., Order, dated Apr. 22, 2016 (adjourning conference based on Respondent's representation that she was finalizing retention of counsel); Minute Entry, dated June 14, 2016 (granting application to adjourn evidentiary hearing to enable Respondent to obtain counsel); Minute Entry, dated July 12, 2014 (setting firm date for Respondent's deposition after delays related to retention of counsel).)

and other defendants ("defendants").  (Tr. at 23:8-14; see generally Complaint, dated Aug. 27, 2012, Dkt. No. 54-21 at 8-29.)

In early 2014, the parties to the Action entered into settlement negotiations.  (Tr. at 28:11-29:8.)  The Honorable Roanne L. Mann, United States Magistrate Judge, initially recommended a settlement amount, which defendants did not accept.  (Id. at 28:11-29:12.)  Respondent then made a settlement demand of $90,000 (id. at 29:13-18), and defendants countered with a counteroffer of $85,000 (id. at 30:9-14).  Respondent accepted defendants' counteroffer on Ms. Edkins' behalf, and the parties agreed to settle the Action in March 2014.  (Id. at 30:12-25.)

Respondent testified at the evidentiary hearing that she discussed both the $90,000 settlement demand and defendants' $85,000 counteroffer with Ms. Edkins, and that Ms. Edkins authorized her both to make the demand and to accept the counteroffer and settle the Action for $85,000.  (Id. at 29:19-30:5; 30:15-31:18.)  Respondent explained that, having represented Ms. Edkins for approximately two years, she believed Ms. Edkins was competent and capable of making a decision to settle the Action.  (Id. at 30:23-31:18; 36:7-24.)

On March 6, 2014, the parties to the Action filed a stipulation of dismissal with prejudice, signed by Respondent and counsel for defendants, and on the same date, Judge Glasser so-ordered the stipulation.  (Tr. at 37:2-38:12; see Stipulation of Dismissal with Prejudice, dated Mar. 5 & Mar. 6, 2014 ("Stip. of Dismissal"), Dkt. No. 54-6.)  That same day, Respondent met personally with Ms. Edkins in Brooklyn, at which time both she and Ms. Edkins signed a stipulation of settlement.[3]  (Tr. at 32:5-34:16.)  The stipulation of settlement provided,

---

[3] Both the stipulation of dismissal and the stipulation of settlement represented that "no party is an infant or incompetent for which a committee has been appointed."  (See Stip. of Dismissal; Stipulation of Settlement, dated Mar. 6 & Mar. 16, 2014, Dkt. No. 54-4 at 8-11.)

5

inter alia, that the City of New York would (1) pay Ms. Edkins $85,000 to settle the Action against all defendants, (2) issue a check for that amount payable to The Wooten Legal Consulting, PC, as Attorneys for Dolores R. Edkins, and (3) send the check to Respondent's then-current office address. (Stipulation of Settlement, dated Mar. 6 & Mar. 16, 2014, Dkt. No. 54-4 at 8-11; see also Tr. at 34:17-36:5.)

During their March 6, 2014 meeting, Respondent explained to Ms. Edkins that she would deduct her fee of 33 and 1/3 percent plus expenses from the settlement proceeds and would then send the balance to Ms. Edkins by check made payable to Ms. Edkins. (Tr. at 39:1-11.) Ms. Edkins instructed Respondent to send the check for her portion of the settlement proceeds to her home address (id. at 39:12-24; 40:9-13), which she provided to Respondent (id. at 39:15-19). Respondent also testified that, during a telephone conversation with Ms. Edkins some time in the spring of 2014, Ms. Edkins subsequently instructed her to send the check for the settlement balance to her at her fiancé's address. (Id. at 39:25-40:21.)

On May 7, 2014, the City of New York issued a check for $85,000 payable to Wooten Legal Consulting Group and Ms. Edkins (the "Settlement Check"). (Endorsed Settlement Check, dated May 7, 2014, Dkt. No. 54-8 at 4; see Tr. at 42:17-43:2.) Respondent testified that around this time she began to receive telephone calls from Mr. Armstrong and Ms. Edkins' fiancé, inquiring about the settlement funds (Tr. at 46:10-21), and that these calls caused her concern that Mr. Armstrong or Ms. Edkins' fiancé would seek to control Ms. Edkins' settlement proceeds (Tr. at 46:10-21; 73:16-25).[4]

---

[4] Respondent states that "Ms. Edkins'[s] fiancé had advised that he intended to use Ms. Edkins'[s] funds to pay for their wedding as well as other things which Ms. Edkins had not consented to to her counsel." (Resp't Mem. at 7.) Respondent also states that she believed Mr.

6

According to Capital One, N.A. ("Capital One") bank records, the Settlement Check was deposited on May 20, 2014 into an account ending in 1277 and bearing the business name Wooten Legal Consulting Group Antoinette M. Wooten Proprietor (the "Settlement Account"). (Settlement Account Information Card, dated Feb. 27, 2012, Dkt. No. 54-8 at 2; Settlement Check Deposit Record, dated May 20, 2014, Dkt. No. 54-8 at 3.) Respondent authorized her process server to endorse the Settlement Check on her behalf and to deposit it into the Settlement Account. (Tr. at 42:17-43:17.) Respondent testified that in late May of 2014 she informed Ms. Edkins that the Settlement Check had arrived and told her that she would send her a check for the settlement balance at Ms. Edkins' fiancé's address. (Id. at 45:4-25.) Respondent concedes that she still has not remitted any portion of the settlement proceeds to Ms. Edkins. (Id. at 46:1-9.)

On May 19, 2014, the day before the $85,000 Settlement Check was deposited into the Settlement Account, the Settlement Account balance was $.60. (Settlement Account Monthly Account Statements, dated Mar. 1, 2014 through Mar. 31, 2016 ("Settlement Account Statements"), at 9, Dkt. No. 54-8.) On May 21, 2014, Respondent transferred $22,000 from the Settlement Account to a Capital One account ending in 6504 and bearing the business name Wooten Legal Consulting Group Antoinette M. Wooten Proprietor Operating Account (the "Operating Account"). (Id.; Operating Account Information Card, dated Oct. 10, 2012, Dkt. No. 54-11 at 2; Operating Account Monthly Account Statements, dated Mar. 1, 2014 through Dec. 31, 2014 ("Operating Account Statements"), at 12, Dkt. No. 54-11; Tr. at 49:11-14; 54:5-16.) Respondent testified that she had calculated the aggregate fees and expenses due to her to be $29,500 (Tr. at 54:20-25), leaving a balance of $55,500 owed to Ms. Edkins. The May 21, 2014

---

Armstrong would not remit the funds to Ms. Edkins because he erroneously believed her to be incompetent, or that he would use the funds to pay for her "institutionalization." (Id. at 8-9.)

7

transfer of $22,000 into the Operating Account represented a portion of her fees and expenses (id. at 54:5-19). Respondent explained that the Operating Account was not intended to hold client funds and that she used it for business expenses and infrequent personal transactions. (Id. at 49:22-14.)

Respondent also held a "Business Advantage Savings" account at Capital One, bearing an account number ending in 6134 and the business name Antoinette M. Wooten DBA The Wooten Legal Consulting (the "Savings Account"). (Savings Account Information Sheet, filed Sept. 9, 2016, Dkt. No. 54-12 at 2; Savings Account Monthly Account Statements, dated Feb. 21, 2014 through Dec. 31, 2014 ("Savings Account Statements"), Dkt. No. 54-12 at 3-12; Tr. at 50:19-51:18.) Respondent testified that this account was not intended to hold client funds, and that she used it for a period of time as a personal savings account. (Tr. at 51:4-18.)

In June and July of 2014, Respondent made additional transfers of funds from the Settlement Account into the Operating Account. (See Settlement Account Statements at 11-13.) Respondent testified that the amounts transferred constituted a portion of the fees and expenses she was owed from the Edkins settlement. (Tr. at 55:11-57:10.) Respondent testified that in or about June 2014 she had another conversation with Ms. Edkins, who instructed her to send Ms. Edkins' portion of the settlement proceeds to either Ms. Edkins' home address or to Ms. Edkins' fiancé's home address, as "either one would be fine." (Id. at 47:11-22.)

On July 11, 2014, Respondent made three transfers of funds from the Settlement Account into the Operating Account, leaving a balance $57,000.60 in the Settlement Account. (Settlement Account Statements at 13; Tr. at 56:17-57:10.) Respondent's Capital One records reflect, and Respondent concedes, that from July 14, 2014 through October 23, 2014, Respondent transferred $57,000 from the Settlement Account to the Operating Account and the

8

Savings Account. (Tr. at 57:11-59:22; Settlement Account Statements at 13-19.) Although Respondent had calculated that $55,500 of the settlement proceeds belonged to Ms. Edkins, Respondent drained the Settlement Account of all but $.60 through thirty separate transfers in amounts ranging from $10 to $9,000. (See Settlement Account Statements at 13-19.)

Prior to the July 14, 2014 transfer, Respondent's Operating Account held a negative balance. (Operating Account Statements at 23.) Respondent's Capital One records reflect that, as settlement funds were subsequently transferred to the Operating Account, Respondent used these funds to pay for business and personal expenses. (See Operating Account Statements at 23-45 (delineating purchases at, e.g., pharmacies, hotels, restaurants, and clothing stores, as well as cash withdrawals).) By the end of October 2014, no settlement funds from the Action remained in the Settlement Account (Settlement Account Statements at 19), and both the Operating Account and the Savings Account held a negative balance (Operating Account Statements at 45; Savings Account Statements at 11).[5]

Respondent testified that she communicated again with Ms. Edkins in or about November 2014. (Tr. at 80:10-13.) At that time Ms. Edkins was "clear" that she wanted the funds from the settlement of the Action to be remitted. (Id. at 80:23-81:8.) Ms. Edkins instructed Respondent to send the funds to her uncle, Mr. Armstrong (Tr. at 80:10-13), and advised that she would "let [Mr. Armstrong] handle the matter" (id. at 82:8-14). While the record is somewhat unclear, Ms. Edkins does not appear to have ever instructed Respondent to issue a check payable to anyone other than Ms. Edkins. (See id. at 88:17-25.)

---

[5] Respondent does not dispute that she transferred the settlement funds out of the Settlement Account; however, she alleges that the account records delivered by Capital One pursuant to a subpoena in this matter incorrectly reflect the balance of her accounts during the relevant time period. (See Tr. at 115:25-116:22.)

9

Although the record clearly reflects that Respondent had spent the entirety of the settlement proceeds by November 2014, Respondent informed Ms. Edkins that she would not send the funds to Mr. Armstrong's address without written authorization. (Id. at 80:14-19.) Respondent did not receive written authorization, but she appears to have made little effort to obtain it. (See id. at 82:18-83:13.) Specifically, Respondent testified that she has had no communication whatsoever with Ms. Edkins since December 2014. (Id.) Nor did she ever notify Mr. Armstrong in writing to advise him that she needed such an authorization. (Id.; see also id. at 92:25-93:4.) Rather, on December 9, 2014, Respondent sent a text message to Ms. Edkins stating "[t]he check was mailed to your Uncle Edward's office last Wednesday." (Text Message, dated Dec. 9, 2014, Dkt. No. 17.) However, there is no evidence that she did so.

By letter dated December 12, 2014, Mr. Armstrong wrote to Judge Glasser to inform him that Respondent had not remitted any portion of the settlement funds, although she told Mr. Armstrong on December 1, 2014 that she would. (See Letter of Edward M. Armstrong to Judge Glasser, dated Dec. 12, 2014, Dkt. No. 5-1.) Judge Glasser then forwarded Mr. Armstrong's letter to Respondent, but the letter was returned as undeliverable. (See id.) On May 6, 2015, Mr. Armstrong's letter was posted on the ECF docket of the Action. (Tr. at 83:21-84:5.) Respondent concedes that she saw the letter but did not respond. (Id.) By letter complaint dated May 26, 2015, Mr. Armstrong brought this disciplinary matter before the Committee (see Letter of Edward W. Armstrong, dated May 26, 2015, Dkt. No. 1), and on January 19, 2016, an Order to Show Cause with Statement of Charges was issued (see Statement of Charges).[6]

---

[6] I note that Respondent's response to the Order to Show Cause with Statement of Charges focused on Respondent's allegation that Mr. Armstrong had improperly demanded a referral fee in relation to the Action and inaccurately calculated Respondent's fees and expenses. (See

Respondent testified at the evidentiary hearing that her conduct was guided by her belief that Ms. Edkins' fiancé and Mr. Armstrong sought to "manipulate[ ]" Ms. Edkins and "had designs on the funds." (See, e.g., Tr. at 89:1-7; 73:16-25; 74:2-75:8; 76:15-77:11; 86:20-88:10; 88:11-88:16; see also Resp't Mem. at 1-5.) Respondent also testified that, in late May or early June of 2014, she called the telephone hotline of the New Jersey Office of Attorney Ethics and, after explaining her concerns, was advised to "get a letter from the client and to secure the funds." (Tr. at 89:14-90:10.) She stated that she received similar advice from attorneys whom she consulted. (Id. at 85:15-86:2.) Respondent admits that no portion of Ms. Edkins' settlement funds remains on deposit in any account in a banking institution (id. at 68:12-17). She maintains, however, that she has set aside for Ms. Edkins a portion of her collection of gold and silver coins which she stores in a coin box at a relative's home in Pennsylvania (id. at 67:25-68:6; 85:2-4; 86:20-23). Respondent estimates that the value of this portion of her coin collection is $55,500 (id. at 94:4-94:9).[7] Other than her testimony, Respondent has provided no evidence of the coins' existence or their value to either Ms. Edkins or the Court. (See Tr. at 68:21-69:16; see also Resp't Mem. at 12 ("Ms. Edkins'[s] attorney believed it would be imprudent to inform Ms. Edkins about the coins . . . .").) Respondent further testified that she was experiencing personal and familial challenges during the relevant time period (Tr. at 85:2-

---

Response to Statement of Charges, dated Oct. 22, 2015.) Under the circumstances here, these allegations are not relevant to the appropriateness of discipline. See Rule 1.15 comment 3 ("[A]ny disputed portion of the funds must be kept in or transferred into a trust account, and the lawyer should suggest means for prompt resolution of the dispute, such as arbitration. The undisputed portion of the funds is to be distributed promptly.")

[7] Respondent testified that she believed maintaining the funds in a bank account would enable Ms. Edkins' fiancé or Mr. Armstrong to access the funds. (Tr. at 76:15-77:12; 117:11-118:18; see also Resp't Mem. at 6 ("Ms. Edkins'[s] attorney determined that securing the funds meant placing them somewhere where neither Ms. Edkins'[s] uncle or fiancé could access them.").)

14), and that, in other cases where she did not believe there were competing demands for client funds, she has remitted funds to clients without issue (id. at 113:12-15; 118:22-120:7).

**DISCUSSION**

Local Rule 1.5(b) provides, inter alia, that the Committee may impose discipline if it is found by clear and convincing evidence that an attorney "[i]n connection with activities in this Court . . . engaged in conduct violative of the New York State Rules of Professional Conduct as adopted from time to time by the Appellate Division of the State of New York."[8] E.D.N.Y. R. 1.5(b)(5). Local Rule 1.5(c)(1) prescribes that "[i]n the case of an attorney admitted to the bar of this Court discipline imposed . . . may consist of a letter of reprimand or admonition, censure, suspension, or an order striking the name of the attorney from the roll of attorneys admitted to the bar of this Court." Id. 1.5(c)(1). Respondent asserts that no discipline should be imposed and the matter should be dismissed. (See generally Resp't Mem.) Prosecuting Counsel's proposed Findings of Fact and Conclusions of Law delineate numerous violations of Rule 1.15 of the New York State Rules of Professional Conduct and request that Respondent be disbarred. (See Prosecuting Att'y Mem. at 19-25.)

1. Rule 1.15(a)

Rule 1.15(a) provides that "[a] lawyer in possession of any funds or other property belonging to another person, where such possession is incident to his or her practice of law, is a fiduciary, and must not misappropriate such funds or commingle such funds or property

---

[8] The rule further provides that "[i]n interpreting the Code, in the absence of binding authority from the United States Supreme Court or the United States Court of Appeals for the Second Circuit, this Court, in the interests of comity and predictability, will give due regard to decisions of the New York Court of Appeals and other New York State courts, absent significant federal interests." E.D.N.Y. R. 1.5(b)(5).

with his or her own." Rule 1.15(a). I find that Respondent violated Rule 1.15(a). Specifically, I conclude that Respondent commingled her client's funds with Respondent's own business and personal funds through multiple bank transfers from the Settlement Account into the Operating and Savings Accounts over a prolonged period. I further conclude that Respondent subsequently misappropriated her client's funds by spending the entire amount due to Ms. Edkins on various business or personal transactions. That Respondent now alleges that she has maintained the settlement funds in the form of a personal collection of gold and silver coins does not alter my conclusion.

2. Rule 1.15(b)

To ensure the total separation of attorney funds from those belonging to others, the Rules require that a lawyer segregate funds belonging to clients or third parties in a special account. Specifically, Rule 1.15(b)(1) provides that "[a] lawyer who is in possession of funds belonging to another person incident to the lawyer's practice of law shall maintain such funds in a banking institution within New York State . . ." and further prescribes that

> [s]uch funds shall be maintained, in the lawyer's own name . . . in a special account or accounts, separate from any business or personal accounts of the lawyer . . . , and separate from any accounts that the lawyer may maintain as executor, guardian, trustee or receiver, or in any other fiduciary capacity; into such special account or accounts all funds held in escrow or otherwise entrusted to the lawyer or firm shall be deposited; provided, however, that such funds may be maintained in a banking institution outside New York State if . . . the lawyer has obtained written approval of the person to whom such funds belong specifying the name and address of the office or branch of the banking institution where such funds are to be maintained.

Rule 1.15(b)(1).

Additionally, subsection (b)(2) provides that "[a] lawyer . . . shall identify the special bank account or accounts required by Rule 1.15(b)(1) as an 'Attorney Special Account,'

13

'Attorney Trust Account,' or 'Attorney Escrow Account,' and shall obtain checks and deposit slips that bear such title." Id. (b)(2). Respondent concedes that the Settlement Account is not so designated. (Tr. at 52:10-53:7.) Moreover, Respondent does not dispute that Ms. Edkins' funds are not maintained in a banking institution in a special segregated account. Therefore, I conclude that Respondent violated Rule 1.15(b).

### 3. Rule 1.15(c)

Rule 1.15(c)(4) provides that a lawyer shall "promptly pay or deliver to a client . . . . the funds . . . in the possession of the lawyer that the client . . . is entitled to receive." Rule 1.15(c)(4). The record is clear that Ms. Edkins consistently requested that Respondent remit the funds, and provided equally clear instructions as to how the funds should be delivered. To the extent that Respondent asserts that Ms. Edkins' instructions were unclear or not in Ms. Edkins' best interests, Respondent took no steps to deliver the funds in a reasonable manner. I thus conclude that Respondent violated Rule 1.15(c).

### 4. Rule 1.15(d)

Related to the duty to segregate client funds is the duty to maintain complete and accurate records of those funds. Rule 1.15(d)(1) provides that "[a] lawyer shall maintain for seven years[,]" inter alia, "the records of all deposits in and withdrawals from the accounts specified in Rule 1.15(b) and of any other bank account that concerns or affects the lawyer's practice of law . . . ." Rule 1.15(d)(1)(i). The Rule further provides that an attorney must maintain "a record for any special accounts, showing the source of all funds deposited in such accounts, the names of all persons for whom the funds are or were held, the amount of such funds, the description and amounts, and the names of all persons to whom such funds were disbursed[.]" Rule 1.15(d)(1)(ii). Respondent conceded at her deposition, more than three

14

months after being served with a document subpoena, that she did not possess any records for the bank accounts at issue.[9] (Respondent's Deposition Transcript, dated July 19, 2016, at 197:20-202:12, Dkt. No. 54-18.) I therefore find that Respondent violated Rule 1.15(d).

    5. Rule 1.15(e)

Rule 1.15(e) provides that "[a]ll special account withdrawals shall be made only to a named payee and not to cash. Such withdrawals shall be made by check or, with the prior written approval of the party entitled to the proceeds, by bank transfer. Only a lawyer admitted to practice law in New York State shall be an authorized signatory of a special account." Rule 1.15(e). Respondent withdrew client funds from the Settlement Account and electronically transferred those funds to her own accounts without Ms. Edkins' knowledge or consent. Respondent, the Settlement Account's sole signatory, is also not admitted to practice law in New York State. (See Tr. at 22:18-20.) Accordingly, I conclude that Respondent violated Rule 1.15(e).

    6. Mitigation and Recommendation

From July to October 2014, Respondent knowingly and without authorization transferred the entirety of Ms. Edkins' settlement funds to Respondent's own Operating and Savings Accounts. The transfers took the form of thirty separate transactions, in amounts ranging from $10 to $9,000. Respondent testified that she converted her client's funds because

---

[9] Respondent testified at her deposition that she had requested or would request certain records of the relevant accounts from Capital One. (See Respondent's Deposition Transcript, dated July 19, 2016, at 197:20-200:7, Dkt. No. 54-18.) She does not appear to have produced requisite account records to date. (See Prosecuting Att'y Mem. at 22.) This conduct also implicates Rule 1.15(i). See Rule 1.15(i) ("The financial records required by this Rule . . . shall be produced in response to a notice or subpoena duces tecum . . . .").

she had set aside a portion of her personal gold and silver coin collection to hold for Ms. Edkins. Respondent did not inform Ms. Edkins, who had been requesting payment, of this decision. These facts alone support disbarment. See In re Katz, 960 N.Y.S. 2d 8, 10 (1st Dep't 2013) ("The 'venal intent' necessary to support intentional conversion [under the predecessor to Rule 1.15] is established where, as here, the evidence shows that the attorney knowingly withdrew client funds without permission or authority and used said funds for his own personal purposes" and "it is well settled within this Department that absent 'exceptional mitigating circumstances' the intentional conversion of escrow funds mandates disbarment.") (collecting cases); In re Kennedy, 950 N.Y.S. 3d 75, 77-78 (1st Dep't 2012) ("Absent extraordinary mitigating circumstances, intentional conversion of escrow funds requires disbarment . . . [and respondent's] intention to make restitution is not considered a factor in matters involving intentional conversion of escrow funds."); In re Jae-Bum Chung, 923 N.Y.S. 2d 587 (2d Dep't 2011) (disbarring attorney for, inter alia, making unauthorized withdrawals from an escrow account); In re Gelzinis, 907 N.Y.S. 2d 273 (2d Dep't 2010) (disbarring attorney for misappropriation of client escrow funds where attorney subsequently reimbursed his client); but see In re Barclay, 978 N.Y.S. 2d 69 (2d Dep't 2013) (suspending attorney from practice for three years where the attorney misappropriated escrow funds but did not convert the entirety of client funds and expressed remorse for her conduct).

In mitigation, Respondent asserts that her conduct was motivated by a concern for safeguarding Ms. Edkins' funds, and that Respondent faced personal challenges during the relevant time period. (See generally Resp't Mem.) Although Respondent has alluded to certain personal challenges she experienced that she urged should mitigate the Committee's sanction, she provided no explanation that would either justify her conduct or demonstrate her fitness to

16

practice law. Accordingly, I respectfully recommend that the Committee issue an Order striking Respondent's name from the roll of attorneys admitted to this Court.

## CONCLUSION

For the reasons set forth above, I find based on clear and convincing evidence that Respondent engaged in conduct violative of Rule 1.15, and respectfully recommend that the Committee issue an Order striking Respondent's name from the roll of attorneys admitted to this Court. Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Cogan and to my chambers, within fourteen (14) days. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

Respectfully submitted,

_____
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
September 19, 2016